# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                             **Case No. 09-CR-24**

**JERMAINE COLEMAN**
        **Defendant.**

## DECISION AND ORDER

Defendant Jermaine Coleman, charged with possessing a firearm as a felon, moved to suppress statements he made to law enforcement officers following a traffic stop, arguing that the officers failed to provide Miranda warnings before questioning him. He also moved to suppress the firearm, which the officers recovered based on his admissions, as fruit of the unlawfully obtained statements. The magistrate judge handling pre-trial proceedings in the case held a hearing, then issued a recommendation that the motion be denied. Defendant objects, requiring me to review the matter de novo. Fed. R. Crim. P. 59(b)(3).

## I. FACTS

In October 2008, Milwaukee Police Department Detectives Scott Marlock and David Lopez received information from an informant about a person named "Maine," who allegedly sold drugs and possessed a pistol, and drove a teal two-door vehicle. On October 15, while conducting surveillance in an unrelated matter, the detectives observed a vehicle and driver matching the description from the informant, and conducted a traffic stop after determining that

the vehicle's plates were suspended due to unpaid parking citations.[1] (Apr. 29, 2009 Evid. Hr'g Tr. at 3-4; 6; 11; 13-14; 30-32; 40.)

Marlock approached the driver, who identified himself as Jermaine Coleman (hereafter "defendant"). (Tr. at 4-5.) Marlock asked defendant if he had a driver's license, and defendant replied that he did not and was revoked. Marlock then asked defendant to exit the vehicle and step behind it, and defendant complied. The officers then spoke with defendant between their vehicle and his. (Tr. at 5; 19-20; 31.)

The detectives advised defendant of the information they had received from the informant, that defendant sold drugs and possessed a pistol. Defendant responded that he did not have anything like that on him or in his car, and allowed the officers to search both. (Tr. at 6; 23.) Marlock conducted the searches, which revealed no contraband. The detectives then asked defendant where he lived, and he replied 1110 North 17th Street, apartment 305, with his girlfriend. This address matched information provided by the informant about where "Maine" lived and kept drugs and a pistol. Marlock then asked defendant if he was a felon, and defendant admitted a conviction for robbery. (Tr. at 7; 25; 34.) Marlock told defendant that he had information that defendant possessed drugs and a pistol in apartment 305 at 1110 North 17th Street, and that based on that information it was possible for him to apply for a search warrant. (Tr. at 7-8; 25; 35.) Marlock asked defendant for consent to search the apartment for guns or other contraband, and defendant replied that he did not want to go back to jail.

---

[1] The detectives made additional observations of defendant's conduct prior to the stop, which they found suspicious. (Tr. at 13-14.) However, because defendant does not challenge the stop, I need not get into those matters. See Whren v. United States, 517 U.S. 806, 810-11 (1996) (holding that a traffic stop is reasonable if the police have probable cause to believe that a traffic violation has occurred, even if the stop is a pretext for pursuing other investigatory agendas).

2

Defendant asked if there was anything he could work out with the officers so he would not have to go back to jail. Marlock responded that depending on what they found in the apartment, it was possible that they could sit down and talk, but he could not promise anything. Defendant then admitted that he had a pistol in the apartment, specifically a 9 mm. (Tr. at 8; 26-27; 35-36.) At the time he admitted possession of the gun, defendant was standing by the roadway between the officers' vehicle and defendant's vehicle. (Tr. at 9.) He was not, at that time, under formal arrest; nor had he been handcuffed or physically restrained, and the officers did not draw their weapons. (Tr. at 9; 11; 37-38.)

Marlock asked if anyone else lived in the apartment, and defendant replied his girlfriend. Defendant again said that he did not want to go back to jail because his girlfriend was pregnant. Defendant further stated that he had ten years hanging over his head and was on probation for the robbery conviction. (Tr. at 10.) Marlock asked defendant to accompany the officers to his apartment to search for the gun or any other contraband, and defendant agreed, stating that the only thing they would find was the gun. (Tr. at 10-11.) The officers then handcuffed defendant and placed him in the back of the squad. (Tr. at 11.) The entire roadside encounter lasted just a few minutes (the detectives' reports suggest about five). (Tr. at 47; 49.)

The detectives did not provide <u>Miranda</u> warnings during the roadside questioning, denying that defendant was in custody at the time. The detectives testified that they could have issued a citation for operating after suspension, that they rarely arrest for such an offense, and that there was no other basis to arrest prior to the revelation of the gun. (Tr. at 49; 52.)[2]

---

[2] The detectives later learned that defendant had an active VOP warrant. (Tr. at 7; 46.)

3

## II.  DISCUSSION

To protect an individual's right against self-incrimination, a suspect must be advised of certain rights prior to being subjected to custodial interrogation.  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  To implicate Miranda, the suspect must be both "in custody" and subject to "interrogation."  United States v. Yusuff, 96 F.3d 982, 987 (7th Cir. 1996).  Only the former requirement is at issue here.

A person is considered "in custody" when his movement is restrained to the degree comparable to a formal arrest.  Id. (citing California v. Beheler, 463 U.S. 1121, 1125 (1983)).  It implies a situation in which the suspect knows he is speaking with a government agent and does not feel free to end the conversation; the essential element of a custodial interrogation is coercion.  United States v. James, 113 F.3d 721, 726 (7th Cir. 1997).  The custody determination is based on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. Id. (citing Stansbury v. California, 511 U.S. 318, 323 (1994)).  The court considers the totality of the circumstances in determining custody, with relevant factors including (1) whether the encounter occurred in a public place; (2) whether the individual consented to speak with the officers; (3) whether the officers informed the individual that he was not under arrest and was free to leave; (4) whether the individual was moved to another area; (5) whether there was a threatening presence of several officers and a display of weapons or physical force; (6) whether the officers deprived the individual of documents he needed to continue on his way; and (7) whether the officers' tone of voice was such that their requests would likely be obeyed. United States v. Budd, 549 F.3d 1140, 1145 (7th Cir. 2008) (citing United States v. Barker, 467 F.3d 625, 628-29 (7th Cir. 2006)), cert. denied, 129 S. Ct. 2030 (2009).

4

As discussed above, the questioning in the present case took place following a traffic stop. Courts have held that such road-side encounters do not ordinarily implicate Miranda, see, e.g., Berkemer v. McCarty, 468 U.S. 420, 440 (1984); United States v. Murray, 89 F.3d 459, 461-62 (7th Cir. 1996); United States v. Kelly, 991 F.2d 1308, 1312-13 (7th Cir. 1993), and nothing about the circumstances of this case suggests a different result.

This brief encounter occurred on a public street, and defendant agreed to step out of his car to speak with the detectives. The detectives did not tell defendant that he was under arrest, or otherwise acted to curtail his freedom of movement, by handcuffing or physically handling him, or drawing their weapons. Nor did they deprive defendant of any documents or other items he needed to be on his way. Just two officers participated in the conversation, and neither raised his voice or otherwise behaved in a threatening manner. Finally, defendant was moved to another area only after he admitted possession of the gun and consented to a search of his apartment.

In United States v. Murray, the Seventh Circuit found that the defendant was not in custody, despite more restrictive circumstances than here. In that case, the defendant was pulled over for a traffic violation, ordered out of the car, could not produce a driver's license, and became verbally combative. 89 F.3d at 461. The officers placed the defendant in their squad and searched his car, recovering a gun. One of the officers asked the defendant about the gun, and he made an incriminating statement. Id. The court rejected his Miranda challenge, holding:

> Under the precedents of Berkemer and Kelly, we conclude that Murray was not "in custody" when he was questioned, and therefore his three or four answers were not subject to suppression. Only a brief period of time had elapsed between the initial stop and the time Murray was asked the questions. The encounter took place on a lighted street in an urban area in public view. There

5

is no evidence that the police officers engaged in conduct which might have overborne Murray's will. Any subjective intent on the part of either officer to arrest Murray is irrelevant since neither officer informed him that he was under arrest until after he made the statements about the gun and his ownership and access to the vehicle.

Lastly, the fact that Murray was questioned while seated in the back of the squad car did not put him "in custody" for purposes of Miranda warnings. See Kelly, 991 F.2d at 1311 (where the defendant was questioned while seated in the front of the squad car). Miranda warnings are not required simply because questioning is conducted in a certain place, or because the person being questioned is suspected of having committed an offense. See Oregon v. Mathiason, 429 U.S. 492, 495 (1977). The relevant inquiry is "how a reasonable [person] in the suspect's position would have understood [the situation]." Berkemer, 468 U.S. at 442. A reasonable person in Murray's position would not have considered the brief questioning at the scene to be a custodial interrogation. Once the police announced that Murray was under arrest and he was put in handcuffs, he was "in custody" for purposes of Miranda. His statements prior to that time were correctly found to be admissible during the trial.

Id. at 462.

The circumstances of the present case are much the same as in Murray, except that defendant was not placed in the squad car prior to making the statements at issue. If Murray was not in custody when questioned, defendant Coleman plainly was not. For all of these reasons and those stated by the magistrate judge, the motion to suppress must be denied.[3]

---

[3] Defendant notes that the detectives had information about him prior to the stop, that they had previously surveilled him, and that they observed him act suspiciously prior to the stop. He argues that based on the detectives' questions about drugs and firearms, this was not a typical traffic stop but rather a pretense to question him about felony matters. However, defendant has not challenged the stop (nor does it appear he could under Whren), and there is no requirement that questions posed by police during a traffic stop be strictly limited to the basis for the stop, so long as the entire encounter remains reasonable. See Arizona v. Johnson, 129 S. Ct. 781, 788 (2009); United States v. Childs, 277 F.3d 947, 953-54 (7th Cir. 2002). More importantly for purposes of the Miranda challenge, the mere fact that the person being questioned is suspected of criminal activity does not activate Miranda; there must also be custody. See Murray, 89 F.3d at 462 ("Miranda warnings are not required simply because . . . the person being questioned is suspected of having committed an offense."). For the reasons stated in the text, defendant was not in custody during this encounter.

6

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation is adopted, and defendant's motion to suppress (R. 11) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 25th day of June, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

7